## PICKHARDT et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 5, 1895.)

### No. 83.

CUSTOMS DUTIES—CLASSIFICATION — BURDEN OF PROOF—GALLEIN AND COERULINE.

Certain imports of gallein (being a dyestuff producing blue and purple shades, and consisting of two parts pyrogallic acid, which is derived from nutgalls or other vegetable matter, and one part phthalic acid, which is derived from coal tar) and of coeruline (which produces green shades, and is made by boiling gallein in sulphuric acid) were classified by the collector as coal-tar colors or dyes not specially provided for, under paragraph 18 of the act of October 1, 1890. *Held*, the evidence being contradictory, that the importer had not sustained the burden resting upon him to overthrow the correctness of the collector's classification, and show that the dyestuffs were dutiable, as claimed in his protest, under paragraph 61, as "other paints and colors, * * * including lakes, crayons, * * * not specially provided for."

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was an application by William Pickhardt and Adolph Kuttroff, partners as William Pickhardt & Kuttroff, importers of certain dyestuffs, for a review of the decision of the board of general appraisers sustaining the decision of the collector of the port of New York as to the rate of duty on such goods. The circuit court affirmed the decision of the board of general appraisers. The importers appealed.

Edward Hartley, for appellants.

James T. Van Rensselaer, Asst. U. S. Atty.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The appellants, composing the firm of William Pickhardt & Kuttroff, imported into the port of New York, after October 1, 1890, and during the year 1891, .sundry invoices of the dyestuffs known as "gallein" and "coeruline." The collector classified this merchandise as coal-tar colors or dyes, and exacted a duty of 35 per cent. ad valorem, under the provision of paragraph 18 of the tariff act of October 1, 1890, which reads as follows: "All coal tar colors or dyes by whatever name known, and not specially provided for in this act, thirty-five per centum ad valorem." The importers protested against this decision upon the ground that the gallein was not a coal-tar color or dye, but should pay a lower rate of duty, because it should be classified as either an extract of logwood or of dyewood, or as a color not specially provided for, or as a chemical compound, or as a coal-tar preparation, not a color or dye. They protested against the collector's exaction upon the coeruline, because it was one of the first three articles just named, and, in some protests, because it was a coal-tar preparation, not color or dye, not specified. The decision of the collector was affirmed by the board of general appraisers, whose decision was affirmed by the circuit court. Upon this appeal the appellants confine themselves to the claim in the protests that the goods were dutiable under paragraph 61 of the tariff act of October 1, 1890, which reads as follows: "All other paints and colors, * * * including lakes, crayons, * * * not specially provided for in this act, * * * twenty-five per cent. ad valorem." The position of the appellants is that the goods are not coal-tar colors or dyes, and, not being so, they must be dutiable under paragraph 61.

Gallein is a dye which produces blue and purple shades, and is made of two molecules or parts of pyrogallic acid and one molecule or part of phthalic acid. The source of commercial supply of pyrogallic acid is from nutgalls, or other vegetable matter. The present source of commercial supply of phthalic acid is from coal tar. Coeruline is a dye made by boiling gallein in sulphuric acid, and produces green shades. Both are used for dying wool, cotton, and silk, as woods were formerly used. They are imported

in petroleum barrels, in the form of paste suspended in water, and containing as múch as 20 per cent. of the dyeing property. The board of general appraisers found that both of these articles were commercially known as "coal-tar colors or dyes," and the circuit judge was of opinion that the witnesses for the importers did not substantially contradict this finding. The record does not contain the testimony upon which the board of general appraisers relied, and the new testimony before the circuit court, upon commercial designation, does not justify the conclusion that these two kinds of dyes are designated in the speech of commerce as "coal-tar products." The oral testimony was of a technical character. The position of the appellants, as stated by a chemist of repute, is that tannic acid is the dominant characteristic or constituent of gallein, and has the color-producing property, while the phthalic acid is the uniting substance. The expert for the United States is a chemist, and is the manager of the factory of a corporation which manufactures coal-tar colors and dyes in this country, but does not make gallein or coeruline. He was of opinion that the gallic acid furnishes the coloring matter, but that if the phthalic anhydride was eliminated, while the thing that remained would be a coloring matter, it would not be worth anything as such. He states his theory as follows: "Without the presence of phthalic anhydride, the body could not exist at all. It would not be worth anything at all. The phthalic anhydride imparts to the methyl very strong acid properties, which alone makes it possible for the dye to combine with metallic bases and form lakes. That is the conditio sine qua non." The same divergence existed, as a matter of course, in regard to the ingredient which was the determining characteristic of coeruline. The respective witnesses were asked their opinion in regard to the correctness of the definition of "gallein" in the Century Dictionary, which defined it as a coal-tar color. The appellants' chemist objected to the definition because he would not call it a coal-tar color, but an artificial coloring matter. As the gallic acid was the chromogenous substance, and was of vegetable origin, he could not call the whole product a coal-tar color. The expert for the government, under his theory of the proper controlling or determining ingredient of the product, pronounced the definition to be a true description of the article.

Under this state of the testimony, the appellants did not sustain the burden which rested upon them to overthrow the presumption of the correctness of the collector's decision. They did not show that the articles were not coal-tar colors, and, if they had, it does not follow, necessarily, that they are dutiable under paragraph 61, for there may be a question which was not examined in the record,—whether this paragraph, which provides for all paints and colors, includes dyestuffs. It is understood that the board of general appraisers has decided this question in the negative. The decision of the circuit court is affirmed.